Opinion
CANTIL-SAKAUYE, C. J.
At the request of the United States Court of Appeals for the Ninth Circuit, we agreed to decide a question of California law that is relevant to the underlying lawsuit in this matter now pending in that federal appellate court. (Perry v. Brown (9th Cir., No. 10-16696); see Cal. Rules of Court, rule 8.548.) As posed by the Ninth Circuit, the question to be decided is “[w]hether under article II, section 8 of the California Constitution, or otherwise under California law, the official proponents of an initiative measure possess either a particularized interest in the initiative’s validity or the authority to assert the State’s interest in the initiative’s validity, which would enable them to defend the constitutionality of the initiative upon its adoption or appeal a judgment invalidating the initiative, when the public officials charged with that duty refuse to do so.”
In addressing this issue, we emphasize at the outset that although in this case the question posed by the Ninth Circuit happens to arise in litigation challenging the validity, under the United States Constitution, of the initiative measure (Proposition 8) that added a section to the California Constitution providing that “[ojnly marriage between a man and a woman is valid or recognized in California” (Cal. Const., art. I, § 7.5), the state law issue that has been submitted to this court is totally unrelated to the substantive question of the constitutional validity of Proposition 8. Instead, the question before us involves a fundamental procedural issue that may arise with respect to any initiative measure, without regard to its subject matter. The same procedural issue regarding an official initiative proponent’s standing to appear as a party in a judicial proceeding to defend the validity of a voter-approved initiative or to appeal a judgment invalidating it when the public officials who ordinarily provide such a defense or file such an appeal decline to do so, could arise with regard to an initiative measure that, for example, (1) limited campaign contributions that may be collected by elected legislative or executive officials, or (2) imposed term limits for legislative and executive *1125 offices, or (3) prohibited government officials from accepting employment after leaving office with companies or individuals that have benefited from the officials’ discretionary governmental decisions while in office. (Cf., e.g., Prop. 73 (Primary Elec. (June 7, 1988)), invalidated in part in Kopp v. Fair Pol. Practices Com. (1995) 11 Cal.4th 607 [47 Cal.Rptr.2d 108, 905 P.2d 1248] [campaign contribution limits]; Prop. 140 (Gen. Elec. (Nov. 6, 1990)), upheld in Legislature v. Eu (1991) 54 Cal.3d 492 [286 Cal.Rptr. 283, 816 P.2d 1309] [term limits]; City of Santa Monica’s ballot measure Prop. LL (Consolidated Gen. Mun. Elec. (Nov. 7, 2000)), upheld in City of Santa Monica v. Stewart (2005) 126 Cal.App.4th 43 [24 Cal.Rptr.3d 72] [postgovernment employment limits].) The resolution of this procedural question does not turn on the substance of the particular initiative measure at issue, but rather on the purpose and integrity of the initiative process itself.
As we discuss more fully below, in the past official proponents of initiative measures in California have uniformly been permitted to participate as parties—either as interveners or as real parties in interest—in numerous lawsuits in California courts challenging the validity of the initiative measure the proponents sponsored. Such participation has routinely been permitted (1) without any inquiry into or showing that the proponents’ own property, liberty, or other personal legally protected interests would be specially affected by invalidation of the measure, and (2) whether or not the government officials who ordinarily defend a challenged enactment were also defending the measure in the proceeding. This court, however, has not previously had occasion fully to explain the basis upon which an official initiative proponent’s ability to participate as a party in such litigation rests.
As we shall explain, because the initiative process is specifically intended to enable the people to amend the state Constitution or to enact statutes when current government officials have declined to adopt (and often have publicly opposed) the measure in question, the voters who have successfully adopted an initiative measure may reasonably harbor a legitimate concern that the public officials who ordinarily defend a challenged state law in court may not, in the case of an initiative measure, always undertake such a defense with vigor or with the objectives and interests of those voters paramount in mind. As a consequence, California courts have routinely permitted the official proponents of an initiative to intervene or appear as real parties in interest to defend a challenged voter-approved initiative measure in order “to guard the people’s right to exercise initiative power” (Building Industry Assn. v. City of Camarillo (1986) 41 Cal.3d 810, 822 [226 Cal.Rptr. 81, 718 P.2d 68] (Building Industry Assn.)) or, in other words, to enable such proponents to assert the people’s, and hence the state’s, interest in defending the validity of the initiative measure. Allowing official proponents to assert the state’s interest in the validity of the initiative measure in such litigation (along with any public officials who may also be defending the measure) (1) assures *1126 voters who supported the measure and enacted it into law that any residual hostility or indifference of current public officials to the substance of the initiative measure will not prevent a full and robust defense of the measure to .be mounted in court on the people’s behalf, and (2) ensures a court faced with the responsibility of reviewing and resolving a legal challenge to an initiative measure that it is aware of and addresses the full range of legal arguments that reasonably may be proffered in the measure’s defense. In this manner, the official proponents’ general ability to appear and defend the state’s interest in the validity of the initiative measure and to appeal a lower court judgment invalidating the measure serves to enhance both the fairness of the judicial process and the appearance of fairness of that process.
We have cautioned that in most instances it may well be an abuse of discretion for a court to fail to permit the official proponents of an initiative to intervene in a judicial proceeding to protect the people’s right to exercise their initiative power even when one or more government defendants are defending the initiative’s validity in the proceeding. (See Building Industry Assn., supra, 41 Cal.3d at p. 822.) Thus, in an instance—like that identified in the question submitted by the Ninth Circuit—in which the public officials have totally declined to defend the initiative’s validity at all, we conclude that, in light of the nature and purpose of the initiative process embodied in article II, section 8 of the California Constitution (hereafter article II, section 8) and the unique role of initiative proponents in the constitutional initiative process as recognized by numerous provisions of the Elections Code, it would clearly constitute an abuse of discretion for a court to deny the official proponents of an initiative the opportunity to participate as formal parties in the proceeding, either as interveners or as real parties in interest, in order to assert the people’s and hence the state’s interest in the validity of the measure and to appeal a judgment invalidating the measure. In other words, because it is essential to the integrity of the initiative process embodied in article II, section 8 that there be someone to assert the state’s interest in an initiative’s validity on behalf of the people when the public officials who normally assert that interest decline to do so, and because the official proponents of an initiative (in light of their unique relationship to the initiative measure under art. II, § 8 and the relevant provisions of the Elec. Code) are the most obvious and logical persons to assert the state’s interest in the initiative’s validity on behalf of the voters who enacted the measure, we conclude that California law authorizes the official proponents, under' such circumstances, to appear in the proceeding to assert the state’s interest in the initiative’s validity and to appeal a judgment invalidating the measure. Neither the Governor, the Attorney General, nor any other executive or legislative official has the authority to veto or invalidate an initiative measure that has been approved by the voters. It would exalt form over substance to interpret California law in a manner that would permit these public officials to indirectly achieve such a *1127 result by denying the official initiative proponents the authority to step in to assert the state’s interest in the validity of the measure or to appeal a lower court judgment invalidating the measure when those public officials decline to assert that interest or to appeal an adverse judgment.
Accordingly, we respond to the question posed by the Ninth Circuit in the affirmative. In a postelection challenge to a voter-approved initiative measure, the official proponents of the initiative are authorized under California law to appear and assert the state’s interest in the initiative’s validity and to appeal a judgment invalidating the measure when the public officials who ordinarily defend the measure or appeal such a judgment decline to do so.
I. Factual and Procedural Background
We begin with a brief summary of the factual and procedural background of the current proceeding.
In May 2008, a majority of this court concluded that the California statutes limiting the designation of marriage to opposite-sex couples violated the right of same-sex couples to the equal protection of the laws as guaranteed by the then governing provisions of the California Constitution. (In re Marriage Cases (2008) 43 Cal.4th 757 [76 Cal.Rptr.3d 683, 183 P.3d 384].) Thereafter, in the general election held in California in November 2008, a majority of voters approved Proposition 8, an initiative measure that amended the California Constitution by adding a new section—section 7.5—to article I of the California Constitution. Section 7.5 of article I of the California Constitution provides in full: “Only marriage between a man and a woman is valid or recognized in California.”
Proposition 8 was submitted to the Attorney General, circulated for signature, and formally filed with the Secretary of State for submission to the voters by five California electors—Dennis Hollingsworth, Gail J. Knight, Martin F. Gutierrez, Hak-Shing William Tam, and Mark A. Jansson—who are the official proponents of the initiative measure under California law. (Elec. Code, §§ 342, 9001.) Shortly after commencing the initiative petition process, the proponents established ProtectMarriage.com—Yes on 8, a project of California Renewal (hereafter ProtectMarriage.com) as a “ballot measure committee” (see Gov. Code, § 84107) to supervise all aspects of the campaign to qualify the measure for the ballot and to seek to obtain its adoption at the ensuing election.
One day after the November 2008 election at which Proposition 8 was approved by a majority of voters, opponents of the measure filed three petitions for an original writ of mandate in this court, challenging the validity *1128 of Proposition 8 under the California Constitution. (The three petitions were ultimately consolidated and decided together in Strauss v. Horton (2009) 46 Cal.4th 364 [93 Cal.Rptr.3d 591, 207 P.3d 48] (Strauss).) The petitions con-ended primarily that Proposition 8 constituted a constitutional revision, which under the California Constitution could not properly be adopted through the initiative process, rather than a constitutional amendment, which could be adopted by initiative; one petition also contended that Proposition 8 violated the separation of powers doctrine embodied in the California Constitution.
While those petitions were pending, and before this court decided whether to accept the matters for decision, the official proponents of Proposition 8 filed motions to intervene in each of the proceedings, to defend the validity of Proposition 8. Shortly thereafter, this court agreed to hear and decide the petitions and, in the same order, granted the official proponents’ motions to intervene in the proceedings.[1]
After briefing and oral argument, this court, on May 26, 2009, handed down its decision in Strauss, supra, 46 Cal.4th 364, concluding (1) that, under the California Constitution, Proposition 8 was a constitutional amendment, rather than a constitutional revision, and thus could be adopted through the initiative process, and (2) that the measure did not violate the separation of powers doctrine embodied in the California Constitution.
On May 22, 2009, just a few days before the decision in Strauss, supra, 46 Cal.4th 364, was filed, plaintiffs Kristin M. Perry, Sandra B. Stier, Paul T. Katami, and Jeffrey J. Zarrillo—two same-sex couples who, after the adoption of Proposition 8, had sought but had been denied marriage licenses in Alameda County and Los Angeles County respectively—filed the underlying action in the current matter in federal district court in San Francisco. (Perry v. Schwarzenegger (N.D.Cal., No. 3:09-cv-02292-VRW).)[2] Plaintiffs’ complaint in Perry named as defendants in their official capacities the Governor of *1129 California, the Attorney General of California, the Director and the Deputy Director of the State Department of Public Health, the Alameda County Clerk-Recorder, and the Los Angeles County Registrar-Recorder/County Clerk. The complaint alleged that Proposition 8 violates the due process and equal protection clauses of the federal Constitution and sought injunctive and declaratory relief.[3]
On May 28, 2009, the proponents of Proposition 8 and ProtectMarriage.com (hereafter Proponents) filed a motion to intervene in the Perry proceeding, maintaining that the existing parties in the action would not adequately represent the interests of those who wished to defend the measure.
On June 12, 2009, all named defendants filed answers to the complaint. In their answers, the named defendants other than the Attorney General refused to take a position on the merits of plaintiffs’ constitutional challenge and declined to defend the validity of Proposition 8. The answer filed by the Attorney General also declined to defend the initiative, but went further and affirmatively took the position that Proposition 8 is unconstitutional.
On July 2, 2009, the district court held a hearing on a number of matters, including the motion to intervene filed by Proponents. At that hearing, the district court observed that “under California law, as I understand it, proponents of initiative measures have the standing to represent proponents and to defend an enactment that is brought into law by the initiative process” and suggested that such intervention by the official initiative proponents was particularly appropriate “where the authorities, the defendants who ordinarily would defend the proposition or the enactment that is being challenged here, are taking the position that, in fact, it is constitutionally infirm[].” Neither plaintiffs nor any of the named defendants objected to Proponents’ motion to intervene and the district court granted the motion.[4]
*1130 Thereafter, Proponents participated as interveners in the district court trial in Perry. Indeed, Proponents were the only parties in the district court to present witnesses and legal argument in defense of the challenged initiative measure.[5]
At the conclusion of the trial, the district court issued a lengthy opinion, setting forth numerous findings of fact and conclusions of law and determining that Proposition 8 violates both the due process and equal protection clauses of the federal Constitution. (Perry I, supra, 704 F.Supp.2d 921.) The district court issued an order enjoining defendants in their official capacities, and all persons under their supervision or control, from applying or enforcing Proposition 8. (704 F.Supp.2d at p. 1003.) The Ninth Circuit subsequently issued an order staying the district court’s judgment pending appeal, and as a result Proposition 8 remains in effect at the present time.
Proponents, as interveners in the district court, filed in the Ninth Circuit a timely appeal of the district court judgment invalidating Proposition 8.[6] None of the named defendants at whom the district court’s injunction was directed appealed from the district court judgment, however, and, in an early order *1131 establishing a schedule for considering the appeal, the Ninth Circuit specifically requested the parties to brief the question whether Proponents have standing to appeal the district court’s ruling.[7]
In the briefs filed in the Ninth Circuit on that issue, plaintiffs argued that Proponents lacked standing to appeal and that, as a consequence, the appeal in Perry should be dismissed. Proponents vigorously contested plaintiffs’ contention, pointing out that they had been permitted to intervene and participate as parties in defense of Proposition 8 both by this court in Strauss, supra, 46 Cal.4th 364, and by the district court in Perry, and asserting that they possessed the requisite standing under both California and federal law.[8]
After conducting oral argument, the three-judge panel of the Ninth Circuit assigned to this case issued an order on January 4, 2011, requesting this court to answer the question of California law set forth above; namely, whether, under California law, the official proponents of an initiative measure that has been approved by the voters possess either “a particularized interest in the initiative’s validity” or “the authority to assert the State’s interest in the initiative’s validity” so as to afford the proponents standing to defend the constitutionality of the initiative or to appeal a judgment invalidating the initiative when the public officials who ordinarily would provide such a defense or file such an appeal decline to do so. (Perry II, supra, 628 F.3d at p. 1193.) In its order, the Ninth Circuit indicated that the answer to this *1132 question of California law may well be determinative of the issue of standing for federal law purposes. (Id. at p. 1196.)
In explaining its reason for submitting this question to this court, the Ninth Circuit stated in part: “Although the Governor has chosen not to defend Proposition 8 in these proceedings, it is not clear whether he may, consistent with the California Constitution, achieve through a refusal to litigate what he may not do directly: effectively veto the initiative by refusing to defend it or appeal a judgment invalidating it, if no one else—including the initiative’s proponents—is qualified to do so. Proponents argue that such a harsh result is avoided if the balance of power provided in the California Constitution establishes that proponents of an initiative are authorized to defend that initiative, as agents of the People, in lieu of public officials who refuse to do so. Similarly, under California law,. the proponents of an initiative may possess a particularized interest in defending the constitutionality of their initiative upon its enactment; the Constitution’s purpose in reserving the initiative power to the People would appear to be ill-served by allowing elected officials to nullify either proponents’ efforts to ‘propose statutes and amendments to the Constitution’ or the People’s right ‘to adopt or reject’ such propositions. Cal. Const., art. II, § 8(a). Rather than rely on our own understanding of this balance of power under the California Constitution, however, we certify the question so that the [California Supreme] Court may provide an authoritative answer as to the rights, interests, and authority under California law of the official proponents of an initiative measure to defend its validity upon its enactment in the case of a challenge to its constitutionality, where the state officials charged with that duty refuse to execute it.” (Perry II, supra, 628 F.3d at p. 1197.)
On February 16, 2011, we agreed to decide the question of California law as requested by the Ninth Circuit and established an expedited briefing schedule that would permit this court to conduct oral argument in this matter as early as September 2011. All parties and numerous amici curiae timely filed briefs in this matter, and oral argument was held on September 6, 2011.
II. Relevance of State Law to Standing Under Federal Law
Decisions of the United States Supreme Court establish that the determination whether an individual or entity seeking to participate as a party in a federal court proceeding or to appeal from an adverse judgment entered in such a proceeding possesses the requisite standing to satisfy the “case or controversy” provisions of article III of the United States Constitution is ultimately a question of federal law upon which the federal courts have the final say. (See, e.g., Phillips Petroleum Co. v. Shutts (1985) 472 U.S. 797, 804 *1133 [86 L.Ed.2d 628, 105 S.Ct. 2965].) As a consequence, many readers of this opinion may reasonably be uncertain why the Ninth Circuit has asked this court to advise it whether initiative proponents possess authority under California law to defend the validity of an initiative measure in a court proceeding in which the measure is challenged and, if so, the basis of such authority. In light of this potential confusion, we believe that it is useful and appropriate briefly to set forth, at the outset, our understanding of the federal decisions that discuss the role that state law plays in determining whether, under federal law, an individual or entity possesses standing to participate as a party in a federal proceeding. We emphasize that our discussion of federal decisions is not intended to, and does not purport to, decide any issue of federal law, and we fully recognize that the effect that this opinion’s clarification of the authority official proponents possess under California law may have on the question of standing under federal law is a matter that ultimately will be decided by the federal courts.
As the question posed by the Ninth Circuit indicates, in the present case two potential bases for standing are implicated: (1) The official proponents of a successful initiative measure may have authority to appear in court to assert the state’s interest in defending the validity of a duly enacted state law,[9] or (2) the official proponents may have their own personal “particularized!” interest in the initiative’s validity. We briefly discuss the federal decisions that analyze the effect of state law on each of these potential bases for standing in federal court.
A. Standing to Assert the State’s Interest in an Initiative’s Validity
With respect to the question of who possesses standing to assert the state’s interest in defending the validity of a state constitutional provision or statute when the state measure is challenged in a federal proceeding, we believe the United States Supreme Court’s decision in Karcher v. May (1987) 484 U.S. 72 [98 L.Ed.2d 327, 108 S.Ct. 388] (Karcher) strongly indicates that a federal court will look to state law to determine whom the state has authorized to assert the state’s interest in the validity of the challenged measure.
In Karcher, a lawsuit was filed in federal district court contending that a recently enacted New Jersey statute that required primary and secondary public schools in that state to observe a minute of silence at the start of each schoolday was unconstitutional as a violation of the establishment clause of *1134 the First Amendment of the federal Constitution. When it became apparent at the outset of the litigation that neither the current New Jersey Attorney General nor any of the named government defendants—the New Jersey Department of Education, the department’s commissioner, and two local boards of education—would defend the validity of the challenged statute, the then Speaker of the New Jersey General Assembly (Karcher) and the then President of the New Jersey Senate (Orechio) sought and were granted the right to intervene as defendants to defend the challenged statute on behalf of the state legislature. In the proceedings in district court, the legislature, through its presiding officers, carried the entire burden of defending the statute. The district court ultimately concluded that the statute was unconstitutional and entered judgment invalidating the statute.
Karcher and Orechio, acting in their official capacities as Speaker of the New Jersey General Assembly and President of the New Jersey Senate, appealed the district court judgment to the Court of Appeals for the Third Circuit. The Third Circuit heard the appeal on the merits and ultimately affirmed the district court decision invalidating the statute.
After the Third Circuit handed down its decision, Karcher and Orechio lost their posts as presiding legislative officers and were replaced by other legislators in those legislative posts. Despite this change in status, Karcher and Orechio filed an appeal of the Third Circuit decision in the United States Supreme Court. The new state legislative presiding officers who had replaced Karcher and Orechio notified the United States Supreme Court that they were withdrawing the legislature’s appeal, but at the same time informed the court that Karcher wanted to continue his appeal of the Third Circuit decision in the Supreme Court. Karcher confirmed that position.
The United States Supreme Court postponed consideration of the jurisdictional issue pending its hearing of the case, and, after oral argument, the high court issued its decision, concluding that because Karcher and Orechio were no longer the legislative leaders of the respective houses of the New Jersey Legislature, they lacked standing to appeal. The court explained: “Karcher and Orechio intervened in this lawsuit in their official capacities as presiding officers on behalf of the New Jersey Legislature. They do not appeal the judgment in those capacities. Indeed, they could not, for they no longer hold those offices. The authority to pursue the lawsuit on behalf of the legislature belongs to those who succeeded Karcher and Orechio in office.” (Karcher, supra, 484 U.S. at p. 77.)
Karcher and Orechio further argued that if, as the high court concluded, their appeal was to be dismissed for want of jurisdiction, the court should also vacate the judgments of the district court and the Third Circuit that had *1135 invalidated the statute at issue. In rejecting this claim, the Supreme Court relied explicitly on the fact that New Jersey law permitted the current presiding legislative officers, acting on behalf of the state legislature, to represent the state’s interest in defending a challenged state law. The court observed: “The New Jersey Supreme Court has granted applications of the Speaker of the General Assembly and the President of the Senate to intervene as parties-respondent on behalf of the legislature in defense of a legislative enactment. In re Forsythe, 91 N. J. 141, 144, 450 A. 2d 499, 500 (1982). Since the New Jersey Legislature had authority under state law to represent the State’s interests in both the District Court and the Court of Appeals, we need not vacate the judgments below for lack of a proper defendant-appellant.” (Karcher, supra, 484 U.S. at p. 82, italics added.)[10]
As the foregoing italicized passage demonstrates, in Karcher the Supreme Court looked to state law to determine whether a prospective litigant had authority to assert the state’s interest in defending a challenged state measure in federal court. Upon reflection this result is not surprising, inasmuch as logic suggests that a state should have the power to determine who is authorized to assert the state’s own interest in defending a challenged state law.
As plaintiffs accurately point out, Karcher, supra, 484 U.S. 72, did not involve a challenge to an initiative measure and did not address the question whether the official proponents of an initiative could properly assert the state’s interest in defending the validity of such an initiative. Plaintiffs also note that in its subsequent decision in Arizonans for Official English v. Arizona (1997) 520 U.S. 43 [137 L.Ed.2d 170, 117 S.Ct. 1055] (Arizonans for Official English), which did involve the question of official initiative proponents’ standing under federal law to appeal a judgment invalidating an initiative measure, the United States Supreme Court expressed “grave doubts” (id. at *1136 p. 66) whether the initiative proponents in that case possessed the requisite standing and distinguished its earlier decision in Karcher. A close review of the relevant portion of the opinion in Arizonans for Official English, however, indicates that the doubts expressed by the high court in that case apparently arose out of the court’s uncertainty concerning the authority of official initiative proponents to defend the validity of a challenged initiative under Arizona law. The relevant passage does not suggest that if a state’s law does authorize the official proponents of an initiative to assert the state’s interest in the initiative measure’s validity when public officials have declined to defend the measure, the proponents would lack standing to assert that interest in a federal proceeding.
In addressing the standing issue in Arizonans for Official English, supra, 520 U.S. 43, the high court stated in relevant part: “Petitioners argue primarily that, as initiative proponents, they have a quasi-legislative interest in defending the constitutionality of the measure they successfully sponsored. [The initiative proponents] stress the funds and effort they expended to achieve adoption of [the initiative]. We have recognized that state legislators have standing to contest a decision holding a state statute unconstitutional if state law authorizes legislators to represent the State’s interests. See Karcher v. May, 484 U.S. 72, 82 ... . [The initiative proponents], however, are not elected representatives, and we are aware of no Arizona law appointing initiative sponsors as agents of the people of Arizona to defend, in lieu of public officials, the constitutionality of initiatives made law of the State. Nor has this Court ever identified initiative proponents as Article-III-qualified defenders of the measures they advocated. Cf. Don’t Bankrupt Washington Committee v. Continental Ill. Nat. Bank & Trust Co. of Chicago, 460 U.S. 1077 [76 L.Ed.2d 338, 103 S.Ct. 1762] (1983) (summarily dismissing, for lack of standing, appeal by an initiative proponent from a decision holding the initiative unconstitutional).” (520 U.S. at p. 65, italics added, fn. omitted.)
Although for the foregoing reasons the court expressed “grave doubts” whether the initiative proponents in question had standing under article III to pursue appellate review (Arizonans for Official English, supra, 520 U.S. at p. 66), the court went on conclude that “we need not definitively resolve the issue” of the initiative proponents’ standing (ibid.) because it concluded that, in any event, a change in the status of the plaintiff in that case rendered the litigation moot and justified vacating the lower federal court rulings that had invalidated the initiative measure (see id. at pp. 67-80).
As the italicized portion of the passage from Arizonans for Official English quoted above indicates, the high court’s doubts as to the official initiative proponents’ standing in that case were based, at least in substantial part, on the fact that the court was not aware of any “Arizona law appointing *1137 initiative sponsors as agents of the people of Arizona to defend ... the constitutionality of initiatives made law of the State.” (Arizonans for Official English, supra, 520 U.S. at p. 65.) In our view, nothing in that decision indicates that if a state’s law does authorize the official proponents of an initiative to assert the state’s interest in the validity of a challenged state initiative when the public officials who ordinarily assert that interest have declined to do so, the proponents would not have standing to assert the state’s interest in the initiative’s validity in a federal lawsuit in which state officials have declined to provide such a defense.[11]
We note in this regard that in its order submitting the present question to this court, the Ninth Circuit stated explicitly that, in its view, if the official proponents of an initiative have authority under California law to assert the state’s interest in the initiative measure’s validity in such a case, then, under federal law, the proponents would have standing in a federal proceeding to assert the state’s interest in defending the challenged initiative and to appeal a judgment invalidating the initiative. (Perry II, supra, 628 F.3d at p. 1196.) Furthermore, although the parties before us emphatically disagree as to whether California law authorizes the official proponents of an initiative to assert the state’s interest in the validity of a voter-approved initiative measure, in the briefs filed both in the Ninth Circuit and in this court all parties agree with the Ninth Circuit’s statement that if the official proponents do have authority under California law to assert the state’s interest in such a case, then under federal law the proponents would have standing in a federal proceeding to defend the initiative and to appeal a judgment invalidating it.
*1138 B. Standing Based on “Particularized Interest”
Under the controlling federal authorities, the role that state law plays in determining whether an official proponent of a successful initiative measure has a sufficient personal “particularized interest” in the validity of the measure to support the proponent’s standing under federal law appears to be more complex than the role played by state law when the official proponent is authorized by state law to assert the state’s interest in the validity of the initiative.
Under the particularized interest standard, federal decisions establish that a federal court considers whether a prospective party is able to demonstrate “an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) ‘actual or imminent, not “conjectural” or “hypothetical.” ’ ” (Lujan v. Defenders of Wildlife (1992) 504 U.S. 555, 560 [119 L.Ed.2d 351, 112 S.Ct. 2130], citations omitted.) In Lujan, the high court further explained that “[b]y particularized, we mean that the injury must affect the plaintiff in a personal and individual way.” (Id. at fn. 1.) Although the United States Supreme Court has recognized that a state “has the power to create new interests, the invasion of which may confer standing” under federal law (Diamond v. Charles, supra, 476 U.S. 54, 65, fn. 17), not every interest that state law recognizes as conferring standing on an individual or entity to institute or to defend a particular kind of lawsuit in state court will be sufficient to establish that the individual or entity has a particularized interest to bring or defend an analogous lawsuit in federal court. (Compare Code Civ. Proc., § 526a [state law recognizing standing of taxpayer to challenge illegal expenditure of public funds in state court] with DaimlerChrysler Corp. v. Cuno (2006) 547 U.S. 332, 342-346 [164 L.Ed.2d 589, 126 S.Ct. 1854] [state taxpayer lacks standing to challenge the constitutionality of state tax credit in federal court].) Under the governing federal cases, whether a right created by state law is sufficient to support federal standing under the particularized interest test necessarily depends upon the nature of the right conferred by the state and the nature of the injury that may be suffered by the would-be litigant. (Cf. Warth v. Seldin (1975) 422 U.S. 490, 500 [45 L.Ed.2d 343, 95 S.Ct. 2197].)
In the present case, the parties disagree as to whether an official initiative proponent possesses a special or distinct interest in the validity of an initiative measure the proponent has sponsored once the initiative has been approved by the voters and adopted as state law, and, even if so, whether the nature of that interest and of the injury the proponent would suffer if the initiative measure is invalidated are sufficient to accord the proponent standing for federal law purposes under the particularized interest standard.
*1139 Proponents maintain that because they possess a fundamental right under the California Constitution to propose statutory or constitutional changes through the initiative process (see, e.g., Costa v. Superior Court (2006) 37 Cal.4th 986, 1007 [39 Cal.Rptr.3d 470, 128 P.3d 675]), they possess a personal, particularized interest in the validity of an initiative measure that they have proposed and that has been approved by the voters, an interest that would go undefended if they are not permitted to provide such a defense when the public officials who ordinarily defend a challenged state law decline to do so. Proponents argue that their personal, fundamental right guaranteed by the initiative provision would be nullified if a voter-approved measure they have sponsored is improperly and incorrectly invalidated because public officials who are hostile to the measure have failed to mount a defense or to appeal a lower court judgment striking down the initiative.
Plaintiffs, by contrast, assert that although the official proponents of an initiative may possess a personal, particularized interest under the California Constitution and the applicable statutory provisions in having an initiative measure they have proposed submitted to the voters, once an initiative measure has been approved by the voters the official proponents have no greater personal legally protected interest in the measure’s validity than any other member of the public. Accordingly, plaintiffs argue that once an initiative measure has been enacted into law, its official proponents do not possess a distinct, particularized interest in the initiative’s validity.
As we explain, we need not decide whether the official proponents of an initiative measure possess a particularized interest in the initiative’s validity once the measure has been approved by the voters. For the reasons discussed below, we conclude that when public officials decline to defend a voter-approved initiative or assert the state’s interest in the initiative’s validity, under California law the official proponents of an initiative measure are authorized to assert the state’s interest in the validity of the initiative and to appeal a judgment invalidating the measure. Because that conclusion is sufficient to support an affirmative response to the question posed by the Ninth Circuit, we need not decide whether, under California law, the official proponents also possess a particularized interest in a voter-approved initiative’s validity.
III. Analysis of Initiative Proponents’ Standing Under California Law
A. Basis of Initiative Proponents’ Standing
Article II, section 1 of the California Constitution proclaims: “All political power is inherent in the people. Government is instituted for their *1140 protection, security, and benefit, and they have the right to alter or reform it when the public good may require.” As this court noted in Strauss, supra, 46 Cal.4th 364, 412-413: “This provision originated in one of the initial sections of the Declaration of Rights contained in California’s first Constitution (Cal. Const, of 1849, art. I, § 2), and reflects a basic precept of our governmental system: that the people have the constitutional right to alter or reform their government.” (Fn. omitted.)
Although California’s original 1849 Constitution declared that “[a]ll political power is inherent in the people,” it was not until 60 years later—in 1911—that the California Constitution was amended to afford the voters of California the authority to directly propose and adopt state constitutional amendments and statutory provisions through the initiative power. In Associated Home Builders etc., Inc. v. City of Livermore (1976) 18 Cal.3d 582, 591 [135 Cal.Rptr. 41, 557 P.2d 473] (Associated Home Builders), we briefly described the history, significance, and consistent judicial interpretation of the constitutionally based initiative power in California: “The amendment of the California Constitution in 1911 to provide for the initiative and referendum signifies one of the outstanding achievements of the progressive movement of the early 1900’s. Drafted in light of the theory that all power of government ultimately resides in the people, the amendment speaks of the initiative and referendum, not as a right granted the people, but as a power reserved by them. Declaring it ‘the duty of the courts to jealously guard this right of the people’ . . . , the courts have described the initiative and referendum as articulating ‘one of the most precious rights of our democratic process’ .... ‘[I\t has long been our judicial policy to apply a liberal construction to this power wherever it is challenged in order that the right be not improperly annulled. If doubts can reasonably be resolved in favor of the use of this reserve power, courts will preserve it.’ ” (Italics added, citations & fns. omitted.)
As a number of our past decisions have explained, the progressive movement in California that introduced the initiative power into our state Constitution grew out of dissatisfaction with the then governing public officials and a widespread belief that the people had lost control of the political process. (See, e.g., Independent Energy Producers Assn. v. McPherson (2006) 38 Cal.4th 1020, 1041-1043 [44 Cal.Rptr.3d 644, 136 P.3d 178]; Strauss, supra, 46 Cal.4th 364, 420-421.) In this setting, “[t]he initiative was viewed as one means of restoring the people’s rightful control over their government, by providing a method that would permit the people to propose and adopt statutory provisions and constitutional amendments.” (Strauss, supra, at p. 421.) The primary purpose of the initiative was to afford the people the ability to propose and to adopt constitutional amendments or statutory provisions that their elected public officials had refused or declined to adopt. The 1911 ballot pamphlet argument in favor of the measure *1141 described the initiative as “that safeguard which the people should retain for themselves, to supplement the work of the legislature by initiating those measures which the legislature either viciously or negligently fails or refuses to enact . . . .” (Sect, of State, Proposed Amends, to Const, with Legis. Reasons, Special Elec. (Oct. 10, 1911) Reasons why Sen. Const. Amend. No. 22 should be adopted, italics added.)
The California constitutional provisions setting forth the initiative power do not explicitly refer to or fully prescribe the authority or responsibilities of the official proponents of an initiative measure,[12] but the Legislature, in adopting statutes to formalize and facilitate the initiative process, has enacted a number of provisions that explicitly identify who the official proponents of an initiative measure are and describe their authority and duties.
Elections Code section 342 defines the proponent of an initiative measure as “the elector or electors who submit the text of a proposed initiative or referendum to the Attorney General with a request that he or she *1142 prepare a circulating title and summary of the chief purpose and points of the proposed measure . . . .” Similarly, Elections Code section 9001 states that “[tjhe electors presenting the request [to the Attorney General] shall be known as the ‘proponents’ ” and requires that prior to the circulation of an initiative petition for signature the text of the proposed measure must be submitted to the Attorney General with a request that “a circulating title and summary of the chief purpose and points of the proposed measure be prepared.”[13] Elections Code sections 9607, 9608, and 9609 place an obligation upon the official proponents of an initiative measure to manage and supervise the process by which signatures for the initiative petition are obtained, and Elections Code section 9032 specifies that, after signatures have been collected, “[t]he right to file the petition [with the designated election officials] shall be reserved to its proponents, and any section thereof presented for filing by any person or persons other than the proponents of a measure or by persons duly authorized in writing by one or more of the proponents shall be disregarded by the elections official.” (Italics added.)
Once an initiative measure has qualified for the ballot, several provisions of the Elections Code vest proponents with the power to control the arguments in favor of an initiative measure. Although any voter can file with the Secretary of State an argument for or against the initiative (Elec. Code, § 9064), a ballot argument shall not be accepted unless it has been “authorized by the proponent” (Elec. Code, § 9065, subd. (d)). If more than one argument is filed, Elections Code section 9067 provides that in preparing the ballot pamphlet “preference and priority” shall be given to the ballot argument submitted by the official proponents of the initiative measure. Proponents similarly control the rebuttal arguments in favor of an initiative. (See Elec. Code, § 9069.) Moreover, proponents retain the power to withdraw a ballot argument at any time before the deadline for filing arguments. (See Elec. Code, § 9601.)
Under these and related statutory provisions (see, e.g., Elec. Code, §§ 9002, 9004, 9604), the official proponents of an initiative measure are recognized as having a distinct role—involving both authority and responsibilities that differ from other supporters of the measure—with regard to the initiative measure the proponents have sponsored.
Neither the state constitutional provisions relating to the initiative power, nor the statutory provisions relating to the official proponents of an initiative measure, expressly address the question whether, or in what circumstances, *1143 the official proponents are authorized to appear in court to defend the validity of an initiative measure the proponents have sponsored. Nonetheless, since the adoption of the initiative power a century ago, decisions of both this court and the Courts of Appeal have repeatedly and uniformly permitted the official proponents of initiative measures to participate as parties—either as interveners or as real parties in interest—in both preelection and postelection litigation challenging the initiative measure they have sponsored. Furthermore, the participation by official initiative proponents as formal parties in such litigation has routinely been permitted whether or not the Attorney General or other public officials were also defending the challenged initiative measure in the judicial proceeding in question.
The decisions in which official initiative proponents (or organizations that have been directly involved in drafting and sponsoring the initiative measure) have been permitted to participate as parties in California proceedings involving challenges to an initiative measure are legion. (See, e.g., Strauss, supra, 46 Cal.4th 364, 399 [postelection challenge]; Independent Energy Producers Assn. v. McPherson, supra, 38 Cal.4th 1020 (Independent Energy Producers) [preelection challenge]; Costa v. Superior Court, supra, 37 Cal.4th 986, 1001 (Costa) [preelection challenge]; Senate of the State of Cal. v. Jones (1999) 21 Cal.4th 1142, 1146 [90 Cal.Rptr.2d 810, 988 P.2d 1089] [preelection challenge]; Hotel Employees & Restaurant Employees Internal Union v. Davis (1999) 21 Cal.4th 585, 590 [88 Cal.Rptr.2d 56, 981 P.2d 990] (Hotel Employees Union) [postelection challenge]; Amwest Surety Ins. Co. v. Wilson (1995) 11 Cal.4th 1243, 1250 [48 Cal.Rptr.2d 12, 906 P.2d 1112] (Amwest) [postelection challenge]; 20th Century Ins. Co. v. Garamendi (1994) 8 Cal.4th 216, 241 [32 Cal.Rptr.2d 807, 878 P.2d 566] (20th Century Ins. Co.) [postelection challenge]; Legislature v. Eu, supra, 54 Cal.3d 492, 500 [post-election challenge]; Calfarm Ins. Co. v. Deukmejian (1989) 48 Cal.3d 805, 812 [258 Cal.Rptr. 161, 771 P.2d 1247] [postelection challenge]; People ex rel. Deukmejian v. County of Mendocino (1984) 36 Cal.3d 476, 480 & fn. 1 [204 Cal.Rptr. 897, 683 P.2d 1150] [postelection challenge]; Legislature v. Deukmejian (1983) 34 Cal.3d 658, 663 [194 Cal.Rptr. 781, 669 P.2d 17] [preelection challenge]; Brosnahan v. Eu (1982) 31 Cal.3d 1, 3 [181 Cal.Rptr. 100, 641 P.2d 200] [preelection challenge]; City of Santa Monica v. Stewart, supra, 126 Cal.App.4th 43, 53 [postelection challenge]; Citizens for Jobs & the Economy v. County of Orange (2002) 94 Cal.App.4th 1311, 1316 & fn. 2 [115 Cal.Rptr.2d 90] [postelection challenge]; City of Westminster v. County of Orange (1988) 204 Cal.App.3d 623, 626 [251 Cal.Rptr. 511] [postelection challenge]; Community Health Assn. v. Board of Supervisors (1983) 146 Cal.App.3d 990, 992 [194 Cal.Rptr. 557] [postelection challenge]; Simac Design, Inc. v. Alciati (1979) 92 Cal.App.3d 146, 153 [154 Cal.Rptr. 676] [postelection challenge]; see also Assembly v. Deukmejian (1982) 30 Cal.3d 638, 644-645 [180 Cal.Rptr. 297, 639 P2d 939] [referendum proponent *1144 permitted to participate as real party in interest in preelection challenge to a proposed referendum].)[14] Moreover, the cases have not only permitted official initiative proponents to appear as formal parties but have also permitted the proponents to appeal from an adverse judgment. (See, e.g., Amwest, supra, 11 Cal.4th at p. 1250; 20th Century Ins. Co., supra, 8 Cal.4th at p. 269; People ex rel. Deukmejian v. County of Mendocino, supra, 36 Cal.3d at p. 480; Simac Design, supra, 92 Cal.App.3d at p. 153.)
Although in most of these cases the official initiative proponent’s participation as a formal party—either as an intervener or as a real party in interest—was not challenged and, as a consequence, this court’s prior decisions (with the exception of the Building Industry Assn, decision discussed below) have not had occasion to analyze the question of the official proponent’s authority to so participate, the prevalence and uniformity of this court’s practice of permitting official proponents to appear as formal parties to defend the initiative measure they have sponsored nonetheless is significant. As Chief Justice Marshall explained in an early decision of the United *1145 States Supreme Court, the existence of numerous decisions that have permitted a judicial procedure without explicitly discussing the procedure’s validity are properly viewed to “have much weight, as they show that [the asserted flaw in the procedure] neither occurred to the bar or the bench.” (Bank of the United States v. Deveaux (1809) 9 U.S. (5 Cranch) 61, 88 [3 L.Ed. 38]; see also Brown Shoe Co. v. United States (1962) 370 U.S. 294, 307 [8 L.Ed.2d 510, 82 S.Ct. 1502].)
Plaintiffs acknowledge that California trial and appellate courts have repeatedly and consistently permitted the official proponents of an initiative to appear as formal parties to defend the initiative measure they have sponsored. Plaintiffs maintain, however, that in all of the prior cases the official proponents were permitted to intervene or to appear as real parties in interest only by virtue of a liberal exercise of judicial discretion and then only to represent the proponents’ own personal interests rather than to assert the state’s interest in the validity of the measure.
Plaintiffs’ characterization of the precedents, however, is not based on the text of those decisions. As already noted, in all but one of this court’s prior decisions we have not been called upon to address the basis of our uniform practice of permitting official initiative proponents to intervene or to appear as real parties in interest in such litigation, and, in particular, to explain whether the proponents’ participation was to assert the state’s interest in the validity of the measure or to defend the proponents’ own particularized personal interest in the validity of the measure (or perhaps in both capacities).[15] The present proceeding affords us the opportunity to address this point.[16]
*1146 In analyzing the legal basis upon which an official initiative proponent’s authority to participate in such litigation rests, we believe it is useful to draw a distinction between legal challenges to an initiative measure that precede the voters’ approval of an initiative measure and legal challenges to an initiative measure that are brought after the initiative has been approved by the voters and adopted into law. (For convenience, we refer to the former category as “preelection” cases and the latter category as “postelection” cases.)
Prior to an election, litigation involving an initiative measure may arise with regard to a wide variety of issues, including, for example, (1) whether the proposed measure may not be submitted to the voters through the initiative process in light of its subject matter (see Independent Energy Producers, supra, 38 Cal.4th 1020) or because it embodies more than one subject (see Senate of the State of Cal. v. Jones, supra, 21 Cal.4th 1142), (2) whether there have been prejudicial procedural irregularities in the process of submitting the matter to the Attorney General or gathering signatures on the initiative petition (see Costa, supra, 37 Cal.4th 986), or (3) whether a sufficient number of valid signatures has been obtained to qualify the matter for the ballot (see Brosnahan v. Eu, supra, 31 Cal.3d 1). In the preelection setting, when a proposed initiative measure has not yet been adopted as state law, the official proponents of an initiative measure who intervene or appear as real parties in interest are properly viewed as asserting their own personal rights and interests—under article II, section 8 of the California Constitution and the California statutes relating to initiative proponents—to propose an initiative measure and have the measure submitted to the voters for approval or rejection. In preelection cases, the official initiative proponents possess a distinct interest in defending the proposed initiative because they are acting to vindicate their own rights under the relevant California constitutional and statutory provisions to have their proposed measure—a measure they have submitted to the Attorney General, have circulated for signature, and have the exclusive right to submit to the Secretary of State after signatures have been collected—put to a vote of the people. Because in the preelection context the *1147 initiative measure has not been approved and enacted into law, the state’s interest in defending the validity of an enacted state law does not come into play.[17]
Once an initiative measure has been approved by the requisite vote of electors in an election, however, the measure becomes a duly enacted constitutional amendment or statute. At that point, in the absence of a showing that the particular initiative in question will differentially affect the official proponents’ own property, liberty or other individually possessed legal right or legally protected interest, it is arguably less clear that the official proponents possess a personal legally protected stake in the initiative’s validity that differs from that of each individual who voted for the measure or, indeed, from that of the people of the state as a whole. Although the matter is subject to reasonable debate, one may question whether the official proponents of a successful initiative measure, any more than legislators who have introduced and successfully shepherded a bill through the legislative process, can properly claim any distinct or personal legally protected stake in the measure once it is enacted into law.
Nonetheless, as we have seen, the decisions of this court and the Courts of Appeal in postelection challenges to voter-approved initiative measures have uniformly permitted the official proponents of an initiative measure to intervene, or to appear as real parties in interest, to defend the validity of the challenged initiative measure. In the postelection setting, the ability of official initiative proponents to intervene or to appear as real parties in interest has never been contingent upon the proponents’ demonstration that their own personal property, liberty, reputation, or other individually possessed, legally protected interests would be adversely or differentially affected by a judicial decision invalidating the initiative measure. (See, e.g., Brosnahan v. Eu, supra, 31 Cal.3d 1 [initiative measure imposing legislative term limits and limiting legislative budget]; City of Santa Monica v. Stewart, supra, 126 Cal.App.4th 43 [initiative measure limiting employment by public officials after leaving public service].) Plaintiffs have not cited, and our research has not disclosed, any decision in which the official proponents of an initiative measure were precluded from intervening or appearing as real parties in interest in a postelection case challenging the measure’s validity, even when they did not have the type of distinct personal, legally protected interest in the subject matter of the initiative measure that would ordinarily support intervention or real party in interest status on a particularized interest *1148 basis. Instead, they have been permitted to participate as parties in such litigation simply by virtue of their status as official proponents of the challenged measure.
As already noted, although most of our prior cases have not had occasion to discuss or analyze the source of the authority possessed by the official proponents of an initiative to intervene in a postelection challenge to defend the initiative measure the proponents have sponsored, one case—Building Industry Assn., supra, 41 Cal.3d 810—does illuminate this court’s uniform practice of permitting official initiative proponents to participate as parties in such postelection cases.
In Building Industry Assn., supra, 41 Cal.3d 810, the issue before the court concerned the validity and proper interpretation of a then recently enacted statutory provision—Evidence Code section 669.5—that, among other things, placed the burden of proof on any city, county, or city and county that adopted an ordinance limiting future residential development to show, in any proceeding challenging the validity of the ordinance, that the ordinance “is necessary for the protection of the [municipality’s] public health, safety, or welfare” (Evid. Code, § 669.5, subd. (b)). The specific question before the court was whether the new provision—shifting to the municipality the burden of proof on this issue—applied to a growth control ordinance that had been adopted through the initiative process or whether the new provision applied only to ordinances enacted by the local legislative body.
In the course of its opinion, the court in Building Industry Assn., supra, 41 Cal.3d 810, addressed a legal argument advanced by an amicus curiae to support the position that the statute could not properly be interpreted to apply to an ordinance adopted through the initiative process. The court stated: “Amicus [curiae] . . . argues that section 669.5 substantially impairs the ability of the people to exercise initiative power because the proponents of the initiative would not have an effective way to defend it. Despite the fact that the city or county would have a duty to defend the ordinance, a city or county might not do so with vigor if it has underlying opposition to the ordinance. Furthermore, the proponents of the initiative have no guarantee of being permitted to intervene in the action, a matter which is discretionary with the trial court. (See Code Civ. Proc., § 387.) This argument would have merit if intervention was unavailable. But when a city or county is required to defend an initiative ordinance and, because of Evidence Code section 669.5, must shoulder the burden of proving reasonable relationship to public health, safety or welfare, we believe the trial court in most instances should allow intervention by proponents of the initiative. To fail to do so may well be an abuse of discretion. Permitting intervention by the initiative proponents under *1149 these circumstances would serve to guard the people’s right to exercise initiative power, a right that must be jealously defended by the courts.” (41 Cal.3d at p. 822.)
Although this passage in Building Industry Assn., supra, 41 Cal.3d 810, was directed at the specific context at issue in that case—involving the burden-shifting provision of Evidence Code section 669.5—in our view the passage is properly understood as more broadly instructive in a number of respects.
First, the passage recognizes that although public officials ordinarily have the responsibility of defending a challenged law, in instances in which the challenged law has been adopted through the initiative process there is a realistic risk that the public officials may not defend the approved initiative measure “with vigor.” (Building Industry Assn., supra, 41 Cal.3d at p. 822.) This enhanced risk is attributable to the unique nature and purpose of the initiative power, which gives the people the right to adopt into law measures that their elected officials have not adopted and may often oppose.
Second, the passage explains that because of the risk that public officials may not defend an initiative’s validity with vigor, a court should ordinarily permit the official proponents of an initiative measure to intervene in an action challenging the validity of the measure in order “to guard the people’s right to exercise initiative power.” (Building Industry Assn., supra, 41 Cal.3d at p. 822.) Because official initiative proponents are permitted to intervene in order to supplement the efforts of public officials who may not defend the measure with vigor, it is appropriate to view the proponents as acting in an analogous and complementary capacity to those public officials, namely as asserting the people’s interest (or, in other words, the state’s interest) in the validity of a duly enacted law. And because the passage clearly states that “[permitting intervention by the initiative proponents . . . would serve to guard the people’s right to exercise initiative power . . .” (ibid., italics added), it is apparent that the official proponents of the initiative are participating on behalf of the people’s interest, and not solely on behalf of the proponents’ own personal interests.
Third, contrary to plaintiffs’ contention that the numerous decisions permitting initiative proponents to intervene or to appear as real parties in interest in postelection litigation challenging an initiative measure simply reflect unfettered discretionary judgments in favor of the proponents’ participation, the passage in Building Industry Assn., supra, 41 Cal.3d 810, states that even when public officials are defending a challenged initiative in pending litigation, “the trial court in most instances should allow intervention by proponents of the initiative” (id. at p. 822), and that “[t]o fail to do so may *1150 well be an abuse of discretion” (ibid.). Because Building Industry Assn. indicates that in most instances it would be an abuse of discretion for a court to preclude intervention by the official initiative proponents even in instances in which the named government defendants are defending the measure, in our view there can be no question but that it would be an abuse of discretion for a court to preclude the official proponents from intervening to defend a challenged initiative measure when the named government defendants have declined to defend the initiative measure. In the latter setting, the official proponents’ ability to intervene indisputably is necessary “to guard the people’s right to exercise initiative power.” (Ibid.)
Plaintiffs argue that the passage in Building Industry Assn., supra, 41 Cal.3d 810, we have been analyzing should properly be considered dictum and should not be followed. Plaintiffs apparently rely on the fact there is no indication in the Building Industry Assn, decision that the official proponents who had sponsored the initiative ordinance at issue in that case had sought and been denied the right to intervene in the underlying action challenging the ordinance. Proponents take issue with plaintiffs’ characterization of this passage as dictum, pointing out that the passage explicitly states that the argument advanced by the amicus curiae—that is, that Evidence Code section 669.5 could not constitutionally be interpreted to apply to ordinances enacted through the initiative process because such application would substantially impair the initiative process—“would have merit if intervention was unavailable.” (41 Cal.3d at p. 822.) Proponents maintain that this statement demonstrates that the discussion of the ability of official initiative proponents to intervene in such actions was essential to the court’s conclusion that the statute could constitutionally be applied to ordinances enacted through the initiative process.
In our view, there is no need to decide whether the passage in Building Industry Assn, is properly considered a holding or dictum, because in any event we believe that the passage accurately describes at least one fundamental basis of this court’s uniform practice of permitting the official proponents of an initiative to intervene or to appear as real parties in interest in cases challenging the validity of a voter-approved initiative measure. The statement in Building Industry Assn, that permitting intervention by such proponents serves to guard the people’s right to exercise the initiative power finds support in numerous cases in which official initiative proponents advanced many of the most substantial legal theories that were raised in support of the challenged measure and were discussed in this court’s opinion. (See, e.g., Strauss, supra, 46 Cal.4th 364, 465-469; Hotel Employees Union, supra, 21 Cal.4th 585, 605-612; Amwest, supra, 11 Cal.4th 1243, 1256-1265; Calfarm Ins. Co. v. Deukmejian, supra, 48 Cal.3d 805, 819-821; see also Citizens for Jobs & the Economy v. County of Orange, supra, 94 Cal.App.4th 1311, 1316-1323; Community Health Assn. v. Board of Supervisors, supra, 146 *1151 Cal.App.3d 990, 991-993.) These decisions highlight the different perspectives regarding the validity or proper interpretation of a voter-approved initiative measure often held by the official proponents of the initiative measure and by the voters who enacted the measure into law, as contrasted with those held by the elected officials who ordinarily defend challenged state laws, and demonstrate that the role played by the proponents in such litigation is comparable to the role ordinarily played by the Attorney General or other public officials in vigorously defending a duly enacted state law and raising all arguable legal theories upon which a challenged provision may be sustained.
The experience of California courts in reviewing challenges to voter-approved initiative measures over many years thus teaches that permitting the official proponents of an initiative to participate as parties in postelection cases, even when public officials are also defending the initiative measure, often is essential to ensure that the interests and perspective of the voters who approved the measure are not consciously or unconsciously subordinated to other public interests that may be championed by elected officials, and that all viable legal arguments in favor of the initiative’s validity are brought to the court’s attention. Although the legal arguments advanced by the official proponents of an initiative are not always the strongest or most persuasive arguments regarding the validity or proper interpretation of the initiative measure that are brought to a court’s attention, past decisions demonstrate the importance of affording such proponents the opportunity to participate, along with elected officials, in asserting the state’s interest in the validity of a challenged initiative measure. Such participation by the official initiative proponents enhances both the substantive fairness and completeness of the judicial evaluation of the initiative’s validity and the appearance of procedural fairness that is essential if a court decision adjudicating the validity of a voter-approved initiative measure is to be perceived as legitimate by the initiative’s supporters.
Moreover, although our past decisions have not had occasion to discuss or identify the specific source of the authority possessed by the official proponents of an initiative measure to assert the state’s interest in the initiative’s validity, we conclude that at least in those circumstances in which the government officials who ordinarily defend a challenged statute or constitutional amendment have declined to provide such a defense or to appeal a lower court decision striking down the measure, the authority of the official proponents of the initiative to assert the state’s interest in the validity of the initiative is properly understood as arising out of article II, section 8 of the California Constitution and the provisions of the Elections Code relating to the role of initiative proponents. The initiative power would be significantly impaired if there were no one to assert the state’s interest in the validity of the measure when elected officials decline to defend it in court or *1152 to appeal a judgment invalidating the measure.[18] Under article II, section 8 and the Elections Code, the official proponents of an initiative measure have a unique relationship to the voter-approved measure that makes them especially likely to be reliable and vigorous advocates for the measure and to be so viewed by those whose votes secured the initiative’s enactment into law. As we have seen, the Legislature has recognized the unique role played by official proponents in the initiative process embodied in article II, section 8, by enacting numerous provisions placing upon the proponents the direct responsibility to manage and control the ballot-qualifying and petition-filing process, as well as authorizing proponents to control the arguments in favor of the initiative that appear in the official voter information guide published by the Secretary of State. (See, e.g., Elec. Code, §§ 9607, 9608, 9609, 9032, 9064, 9065, subd. (d), 9069, 9601.) Thus, regardless of the initiative’s effect on their personal and particularized legally protected interests, the official proponents are the most logical and appropriate choice to assert the state’s interest in the validity of the initiative measure on behalf of the electors who voted in favor of the measure.[19]
Accordingly, we conclude that when the public officials who ordinarily defend a challenged measure decline to do so, article II, section 8 of the California Constitution and the applicable provisions of the Elections Code authorize the official proponents of an initiative measure to intervene or to participate as real parties in interest in a judicial proceeding to assert the state’s interest in the initiative’s validity and to appeal a judgment invalidating the measure.
*1153 B. Plaintiffs’ Objections to Official Initiative Proponents’ Authority to Assert the State’s Interest in the Validity of a Voter-approved Initiative
Plaintiffs advance a number of objections to a determination that the official proponents of an initiative are authorized to assert the state’s interest in the validity of a voter-approved initiative when the public officials who ordinarily defend a challenged state law decline to do so. For the reasons discussed below, we conclude that none of the objections has merit.
1.
Plaintiffs initially rely upon the provisions of the California Constitution setting forth the authority and obligation of the Governor and the Attorney General with regard to the enforcement of the law (Cal. Const., art. V, §§ 1, 13),[20] and upon the California statutory provisions designating the Attorney General’s role in court actions against the state (Gov. Code, §§ 12511, 12512; Code Civ. Proc., § 902.1).[21] Plaintiffs maintain that these constitutional and statutory provisions mean that the Attorney General is the only person who can assert the state’s interest in defending a challenged law and preclude initiative proponents from asserting the state’s interest in the validity of a challenged law. Plaintiffs insist that when the Attorney General declines to provide such a defense, the sole remedy of those who object to the Attorney General’s action is “at the ballot box.”
The constitutional and statutory provisions to which plaintiffs point establish that in a judicial proceeding in which the validity of a state law is challenged, the state’s interest in the validity of the law is ordinarily asserted by the state Attorney General. These constitutional and statutory provisions, however, have never been interpreted to mean that the Attorney General is the *1154 only person or entity that may assert the state’s interest in the validity of a state law in a proceeding in which the law’s validity is at issue.
The State of California, of course, is composed of three branches of government, a great number of elected and appointed public officials, and myriad state and local agencies, boards, and public entities. In many instances the interests of two or more public officials or entities may conflict and give rise to differing official views as to the validity or proper interpretation of a challenged state law. In such instances, it is not uncommon for different officials or entities to appear in a judicial proceeding as distinct parties and to be represented by separate counsel, each official or entity presenting its own perspective of the state’s interest with regard to the constitutional challenge or proposed interpretation at issue in the case.
The case of Amwest, supra, 11 Cal.4th 1243, provides an apt illustration. In Amwest, shortly after the voters approved Proposition 103—a broad insurance reform initiative measure that, among other things, required a rollback of insurance rates—the plaintiff insurer filed a petition for writ of mandate in superior court, alleging that application of the rate rollback provisions of Proposition 103 to surety insurers would violate the constitutional rights of such insurers. The petition named the Governor, the Attorney General, the State Board of Equalization, and the Insurance Commissioner as defendants. While the proceeding was pending in superior court, the Legislature enacted a statute—Insurance Code former section 1861.135—that purported to exempt surety insurers from the rate rollback provisions of Proposition 103. The validity of the new statute was called into question in the Amwest proceeding, because there was a dispute whether the statute was a constitutionally impermissible attempt to revise Proposition 103 without submitting the revision to a vote of the people (see Cal. Const., art. II, § 10, subd. (c)) or instead whether the statute furthered the purpose of Proposition 103 and thus was permissible under the explicit terms of Proposition 103 itself. (See Amwest, supra, at p. 1247.)
Although Amwest is one of the many California cases, cited above, in which an initiative proponent was permitted to intervene as a formal party and to appeal an adverse decision (see ante, at pp. 1143-1144), Amwest is also a case in which the named government defendants themselves took conflicting positions regarding the validity of the new statute. In that case, the Governor, the Attorney General, and the State Board of Equalization—all represented by the Attorney General—maintained that the new statute was constitutionally valid. By contrast, the Insurance Commissioner—represented by separate counsel—took the position that the new statute did not further the purpose of Proposition 103 and was invalid. (See Amwest, supra, 11 Cal.4th at p. 1251, fn. 8.) Although some of the government defendants in Amwest (the *1155 Governor, the Attorney General and the State Board of Equalization) were defending the validity of the new statutory measure adopted by the Legislature whereas the remaining government defendant (the Insurance Commissioner) was defending the integrity of the voter-approved initiative measure, each government defendant could accurately be described as asserting the state’s interest in the validity and proper application and interpretation of a duly enacted state law. In that proceeding, the Attorney General was not the sole or exclusive representative of the state’s interest in the validity and proper interpretation of a duly enacted state statute.
As Amwest illustrates, it is hardly uncommon for public officials or entities to take different legal positions with regard to the validity or proper interpretation of a challenged state law. (See, e.g., In re Marriage Cases, supra, 43 Cal.4th 757 [Prop. 22]; Legislature v. Eu, supra, 54 Cal.3d 492, 500 [Prop. 140]; Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization (1978) 22 Cal.3d 208 [149 Cal.Rptr. 239, 583 P.2d 1281] [Prop. 13].)
Moreover, even when there is neither a conflict of interest nor a difference of opinion among the government officials or entities named in the litigation, in those instances in which the Attorney General or another public official declines to defend a state statute or constitutional provision in a court proceeding because of that official’s view that the challenged provision is unconstitutional, other public officials or entities, represented by separate counsel, have been permitted to assert the state’s interest in defending the challenged law. (See, e.g., Connerly v. State Personnel Bd., supra, 37 Cal.4th 1169, 1174.) Permitting other officials to present legal arguments in defense of a challenged state law when the Attorney General has declined to do so does not mean that the Attorney General has violated his or her duty or acted improperly in declining to defend "the law. Even when the Attorney General has discretion to decline to defend a challenged law or to appeal a lower court ruling invalidating the law, the Attorney General’s decision to exercise discretion in that fashion does not preclude other officials or entities from defending the challenged law or appealing an adverse judgment. Although the Attorney General’s legal judgment may appropriately guide that official’s own discretionary actions, the validity or proper interpretation of a challenged state constitutional provision or statute is, of course, ultimately a matter to be determined by the courts, not the Attorney General. (Cf., e.g., Lockyer v. City and County of San Francisco (2004) 33 Cal.4th 1055 [17 Cal.Rptr.3d 225, 95 P.3d 459].) We are aware of no case that has held or suggested that the Attorney General may preclude others from defending a challenged state law *1156 or from appealing a judgment invalidating the law when the Attorney General has declined to provide such a defense or take an appeal.[22]
Thus, the constitutional and statutory provisions relating to the Attorney General’s authority and responsibilities do not preclude others from asserting the state’s interest in the validity of a challenged law.
2.
Plaintiffs next argue that appearing in court to assert the state’s interest in the validity of a challenged law or to appeal a judgment invalidating the law is exclusively an executive branch function. Because the authority to propose and adopt state constitutional amendments or statutes embodied in the initiative provisions of the California Constitution is essentially a legislative authority (see, e.g., Professional Engineers in California Government v. Kempton (2007) 40 Cal.4th 1016, 1038 [56 Cal.Rptr.3d 814, 155 P.3d 226]; American Federation of Labor v. Eu (1984) 36 Cal.3d 687, 715 [206 Cal.Rptr. 89, 686 P.2d 609]), plaintiffs maintain that it would violate the separation of powers doctrine to permit the official proponents of an initiative to assert the state’s interest in defending a challenged measure.
Past authority, however, does not support plaintiffs’ claim that appearing as a party in court to assert the state’s interest in the validity of a challenged law is exclusively an executive function. In INS v. Chadha (1983) 462 U.S. 919 [77 L.Ed.2d 317, 103 S.Ct. 2764] (Chadha), for example, the United States Supreme Court stated emphatically: “We have long held that Congress is the proper party to defend the validity of a statute when an agency of government, as a defendant charged with enforcing the statute, agrees with plaintiffs that the statute is inapplicable or unconstitutional.”[23] (Chadha, at p. 940.) And, as discussed earlier in this opinion, the United States Supreme Court *1157 held in Karcher, supra, 484 U.S. 72, that, when authorized by state law, leaders of a state’s legislative branch are permitted to appear as parties to assert the state’s interest in the validity of a challenged statute when the state’s executive officials decline to do so.[24]
Although we are not aware of any California case in which the Legislature has appeared as a formal party to defend a challenged state law when the Attorney General or other public officials have declined to do so, plaintiffs have cited no case that supports the claim that it would violate the separation of powers doctrine embodied in the California Constitution for the Legislature to provide such a defense when other public officials decline to do so. In a number of California cases, the Legislature or one of its constituent houses has appeared as a party in litigation challenging the validity of a proposed or adopted initiative or referendum measure (see, e.g., Senate of the State of Cal. v. Jones, supra, 21 Cal.4th 1142, 1156, fn. 9; Legislature v. Eu, supra, 54 Cal.4th 492; Legislature v. Deukmejian, supra, 34 Cal.3d 658; Assembly v. Deukmejian, supra, 30 Cal.3d 638)—often in instances in which the Attorney General or other executive officials took a position contrary to the Legislature’s regarding the validity of the measure (see, e.g., Legislature v. Eu, supra, 54 Cal.4th 492; Legislature v. Deukmejian, supra, 34 Cal.3d 658; Assembly v. Deukmejian, supra, 30 Cal.3d 638). These cases belie any suggestion that such action by the Legislature in any way usurped or interfered with the executive officials’ performance of their executive function. (See also Californians for an Open Primary v. McPherson (2006) 38 Cal.4th 735 [43 Cal.Rptr.3d 315, 134 P.3d 299] [Legislature, represented by separate counsel, appeared as real party in interest to defend validity of voter-approved constitutional amendments submitted to electorate by Legislature]; Kopp v. Fair Pol. Practices Com., supra, 11 Cal.4th 607, 614 [Legislature permitted to intervene to defend the validity of the defendant commission’s actions when the commission itself took a neutral position with respect to the challenge to its actions].)
*1158 Accordingly, we find no merit in plaintiffs’ claim that appearing in court to assert the state’s interest in the validity of a challenged law is exclusively an executive function or that it would violate the separation of powers doctrine to permit the official proponents of an initiative to assert the state’s interest in the validity of the initiative in a judicial proceeding in which the validity of the measure is challenged. Furthermore, because there is no reason to doubt that the California Legislature, like the United States Congress in Chadha, supra, 462 U.S. 919, or the New Jersey Legislature in Karcher, supra, 484 U.S. 72, would have authority to step in to assert the state’s interest in the validity of a statute enacted by the Legislature if the state’s executive officials have declined to defend the statute’s validity in a court proceeding, we conclude that the people are no less entitled to have the state’s interest in the validity of a voter-approved initiative asserted on their behalf when public officials decline to defend the measure.
3.
Plaintiffs also raise another, somewhat related, separation of powers claim, contending that permitting an initiative proponent to assert the state’s interest in the validity of a challenged initiative measure will interfere with the Attorney General’s exercise of the powers of his or her office in representing the state’s interest. Our recognition that official initiative proponents are authorized to assert the state’s interest in an initiative’s validity when public officials have declined to defend the measure, however, does not mean, as plaintiffs suggest, that the proponents are authorized to “override” the Attorney General’s or other public officials’ authority to make their own decisions regarding the defense of the measure. As we have discussed, in many past cases initiative proponents have been permitted to participate as formal parties defending an initiative measure along with the public officials named as defendants, and in those instances each party has been permitted to proffer its own arguments and control its own actions in defense of the initiative.
Similarly, the ability of official initiative proponents to defend a challenged initiative measure on behalf of the state is not inconsistent with the discretion the Attorney General may possess to decline to defend a challenged measure or to decline to appeal from an adverse judgment when the Attorney General is of the view that a challenged initiative measure is unconstitutional. (Cf. State of California v. Superior Court (1986) 184 Cal.App.3d 394 [229 Cal.Rptr. 74].) As already discussed, even when the Attorney General has discretion to decline to defend a state constitutional provision or statute in a court proceeding challenging the measure, the Attorney General does not have authority to prevent others from mounting a defense on behalf of the state’s interest in the validity of the measure. For *1159 example, in the underlying proceedings in the Perry litigation, had any of the other public officials who were named as defendants chosen to present a substantive defense of the challenged measure or to appeal the adverse judgment entered by the trial court, the Attorney General could not have prevented that public official from presenting a defense or filing an appeal and could not persuasively maintain that the presentation of such a defense or the filing of such an appeal by another defendant would constitute an improper interference with the Attorney General’s exercise of his or her official authority. By the same token, the authority of official initiative proponents to participate as formal parties to defend a challenged initiative, and to appeal a judgment invalidating the measure, does not improperly interfere with the Attorney General’s authority and does not violate the separation of powers doctrine.
4.
Plaintiffs also contend that because the official proponents of an initiative measure are private individuals who have not been elected to public office, take no oath to uphold the California Constitution or laws, cannot be recalled or impeached, and are not subject to the conflict of interest rules or other ethical standards that apply to public officials, they cannot properly assert the state’s interest in the validity of a challenged initiative measure.
Our determination that the official proponents of an initiative are authorized to assert the state’s interest in the validity of the initiative measure when public officials have declined to defend the measure, however, does not mean that the proponents become de facto public officials or possess any official authority to enact laws or regulations or even to directly enforce the initiative measure in question. Rather, the authority the proponents possess in this context is simply the authority to participate as parties in a court action and to assert legal arguments in defense of the state’s interest in the validity of the initiative measure when the public officials who ordinarily would assert the state’s interest in the validity of the measure have not done so. This authority is extremely narrow and limited and does not imply any authority to act on behalf of the state in other respects. Because of the limited nature of the proponents’ authority, they are properly subject to the same ethical constraints that apply to all other parties in a legal proceeding.
As discussed above, we recognized in Building Industry Assn., supra, 41 Cal.3d at page 822, that because of the fundamental purpose and unique nature of the initiative process—a process designed to give the people of California the authority to directly adopt constitutional amendments or statutes that their elected officials have refused or declined to adopt and may often oppose—there is an increased risk, even when public officials are *1160 defending a challenged initiative measure, that the public officials may fail to defend the measure with vigor. As a consequence, we indicated in Building Industry Assn, that even in such circumstances a court generally should permit the official proponents of an initiative to intervene in the proceeding “to guard the people’s right to exercise initiative power.” (Ibid.) When public officials totally decline to defend a challenged initiative measure, the state’s interest in the initiative’s validity would go completely undefended, and the voters who enacted the initiative measure into law would be entirely deprived of having the state’s interest in the initiative’s validity asserted on their behalf, unless some private individual or entity is permitted to assert that interest on the voters’, that is to say, the people’s, behalf. Because of their special relationship to the initiative measure, the official proponents of the measure are the most obvious and logical private individuals to ably and vigorously defend the validity of the challenged measure on behalf of the interests of the voters who adopted the initiative into law, and thus to assert the state’s interest in the initiative’s validity when public officials have declined to do so.
Moreover, even outside the initiative context it is neither unprecedented nor particularly unusual under California law for persons other than public officials to be permitted to participate as formal parties in a court action to assert the public’s or the state’s interest in upholding or enforcing a duly enacted law. For example, under the so-called “public interest” exception in mandate actions, private citizens have long been authorized to bring a mandate action to enforce a public duty involving the protection of a public right in order to ensure that no government body impairs or defeats the purpose of legislation establishing such a right. (See, e.g., Green v. Obledo (1981) 29 Cal.3d 126, 144-145 [172 Cal.Rptr. 206, 624 P.2d 256]; Common Cause v. Board of Supervisors (1989) 49 Cal.3d 432, 439 [261 Cal.Rptr. 574, 777 P.2d 610]; see generally 8 Wilkin, Cal. Procedure (5th ed. 2008) Extraordinary Writs, § 84, pp. 970-973.) Similarly, under the well-established private attorney general doctrine, private individuals are permitted to act in support of the public interest by bringing lawsuits to enforce state constitutional or statutory provisions in circumstances in which enforcement by public officials may not be sufficient. (See, e.g., Serrano v. Priest (1977) 20 Cal.3d 25, 42-47 [141 Cal-Rptr. 315, 569 P.2d 1303]; Woodland Hills Residents Assn., Inc. v. City Council (1979) 23 Cal.3d 917, 933, 941-942 [154 Cal.Rptr. 503, 593 P.2d 200].)[25] Indeed, the authority of the official proponents of an initiative to assert the state’s interest in the present context is a *1161 more modest authority than the authority exercised by private individuals under either the public interest mandate exception or the private attorney general doctrine, because under those doctrines private individuals are authorized to act affirmatively on behalf of the public and institute proceedings to enforce a public right, whereas the authority possessed by the official initiative proponents in the present context is simply a passive, defensive authority to step in to assert the state’s interest in the validity of a challenged measure when the initiative has been challenged by others in judicial proceedings and public officials have declined to defend the measure.
In sum, even though the official proponents of an initiative measure are not public officials, the role they play in asserting the state’s interest in the validity of an initiative measure in this judicial setting does not threaten the democratic process or the proper governance of the state, but, on the contrary, serves to safeguard the unique elements and integrity of the initiative process.
5.
Finally, plaintiffs suggest that a determination that the official proponents of an initiative are authorized to assert the state’s interest in the validity of a challenged initiative in a court proceeding will result in untoward consequences in other contexts.
For example, plaintiffs contend that if official initiative proponents are permitted to assert the state’s interest in an initiative’s validity and to appeal an adverse judgment when the Attorney General and other public officials have declined to do so, the proponents’ action in filing an appeal may subject the state to substantial monetary liability for attorney fees should the proponents’ efforts in support of the challenged measure prove unsuccessful. The question of who should bear responsibility for any attorney fee award in such circumstances, however, is entirely distinct from the question whether the official proponents of an initiative are authorized to assert the state’s interest in the validity of a challenged initiative measure and is not before us in this proceeding. Our conclusion that official initiative proponents are authorized to assert the state’s interest in the validity of a challenged initiative measure when public officials decline to do so does not mean that any monetary liability incurred as a result of the proponents’ actions should or must be borne by the state. The attorney fee issue can properly be addressed if and when the question arises in the future. (Cf. Connerly v. State Personnel Bd., supra, 37 Cal.4th at pp. 1178-1179 [distinguishing status of intervener initiative proponents from that of amicus curiae in concluding that amicus curiae could not properly be held liable for private-attomey-general attorney fee award].)
*1162 Similarly, we have no occasion in this case to address other legal questions that may arise in future cases if there is a conflict between the positions taken by initiative proponents and by other defendants who are appearing on behalf of the state. The issue before us is limited to the question whether official initiative proponents are authorized to appear as parties to assert the state’s interest in the validity of an initiative measure when the public officials who ordinarily provide such a defense have declined to do so. The numerous cases discussed above in which initiative proponents, Congress, or state legislative leaders have been permitted to intervene to present legal arguments regarding the validity and proper interpretation of a challenged law refute the claim that permitting an initiative’s official proponents to participate on this basis is unworkable or will inevitably result in detrimental consequences.
C. Out-of-state Decisions
As the foregoing discussion indicates, in reaching the conclusion that the official proponents of an initiative are authorized under California law to defend a challenged initiative measure and to appeal from a judgment invalidating the measure when public officials decline to defend the initiative, we have relied upon the history and purpose of the initiative provisions of the California Constitution and upon the numerous California decisions that have uniformly permitted the official proponents of initiative measures to appear as parties and defend the validity of the measures they have sponsored.
In addition, we note that in recent years each of the two other state supreme courts that has addressed the question whether the official proponents of an initiative measure have standing under state law to intervene in an action challenging the validity of the initiative measure has concluded that, under each state’s respective law, initiative proponents generally are authorized to intervene as of right in such an action in state court.
1.
In Alaskans for a Common Language v. Kritz (Alaska 2000) 3 P.3d 906 (Alaskans for a Common Language), the issue of standing arose in an action challenging the validity of a voter-approved initiative measure that—like the Arizona initiative involved in Arizonans for Official English, supra, 520 U.S. 43 (see ante, at pp. 1135-1136)—provided that English shall be used by all public agencies in all government functions and actions and in the preparation of all official public documents and records. Two organizations—the first, the official proponents of the initiative measure in Alaska, and the second, a national organization (U.S. English) that supported the Alaska measure—sought to intervene as formal parties in the trial court proceedings, but the trial court denied both requests on the ground that the interests of the *1163 would-be interveners were adequately represented by the government defendants who were defending the initiative measure in the proceeding. Both organizations appealed the trial court’s ruling denying intervention. On appeal, the Alaska Supreme Court reversed the trial court’s ruling insofar as it denied intervention by the official proponents of the measure but affirmed the lower court ruling insofar as it denied intervention by the other organization.
In analyzing the question of the official proponents’ right to intervene, the Alaska Supreme Court noted that prior to the vote on the initiative measure at issue in that case, the attorney general’s office had raised potential questions regarding the constitutionality of the measure and the governor had personally opposed the measure during the election campaign. (Alaskans for a Common Language, supra, 3 P.3d at pp. 909-910.) Nonetheless, observing that courts generally “recognize a presumption of adequate representation when government entities are parties to a lawsuit because those entities are charged by law with representing the interests of the people” (id at p. 913), the Alaska Supreme Court stated that “[b]ased on the presumption of adequate government representation, we presume that the Attorney General’s Office would not fail to defend the constitutionality of the initiative energetically and capably. Based on that same presumption, we also presume that the governor would not interfere” (id at p. 914).
The court in Alaskans for a Common Language, supra, 3 P.3d 906, went on to explain, however, that despite the court’s presumption that the government defendants would energetically and capably defend the challenged measure, inasmuch as the initiative proponents had “used the process of direct legislation to enact a law that the executive branch questioned and opposed[,] [t]hey cannot be faulted for wanting to guarantee that the initiative is defended zealously or for trying to ensure that the credibility of institutional arguments in favor of the initiative is not diminished by the previous comments from the executive branch. To them, and to the public in sympathy with the initiative, the governor’s opposition and the Attorney General Office’s questions . . . during the campaign, could create an appearance of adversity. Every strategic decision made by the Attorney General’s Office in defending the legislation might be publicly questioned and second-guessed by the initiative’s sympathizers. That this suspicion may be unfounded does not make it less inevitable.” (3 P.3d at p. 914.)
The Alaska Supreme Court went on to conclude; “Here, because of the nature of direct legislation through the initiative process, the possible appearance of adversity of interest is sufficient to overcome the presumption of adequate representation. Indeed, we believe that [an initiative] sponsor’s direct interest in legislation enacted through the initiative process and the concomitant need to avoid the appearance of adversity will ordinarily *1164 preclude courts from denying intervention as of right to a sponsoring group.” (Alaskans for a Common Language, supra, 3 P.3d at p. 914, italics added.)[26] Accordingly, the court held that the trial court erred in denying intervention by the official proponents of the initiative measure and reversed that portion of the trial court’s ruling.
The Alaska Supreme Court reached a contrary conclusion, however, with respect to the other organization that had sought intervention in the trial court. Pointing out that “[t]he record fails to show, and U.S. English has not asserted, that its directors, officers, or incorporators were sponsors of the initiative in Alaska or were members of the initiative committee” (Alaskans for a Common Language, supra, 3 P.3d at p. 916), the court found that “U.S. English has not established that its interest is any greater than a generalized interest of a political nature” (ibid.). It held that the organization did not qualify for intervention as a matter of right and that the trial court did not abuse its discretion in denying permissive intervention. (Ibid.)
2.
In Sportsmen for 1-143 v. Fifteenth Judicial Court (2002) 308 Mont. 189 [40 P.3d 400] (Sportsmen for 1-143), the Montana Supreme Court similarly addressed the general issue “whether the primary proponent of a ballot initiative has a legally protectable interest sufficient to allow it to intervene in a case challenging the resulting statute.” (Id., 40 P.3d at p. 402.) As in Alaskans for a Common Language, supra, 3 P.3d 906, in Sportsmen for 1-143 the trial court had denied a motion to intervene by the sponsors of the challenged initiative measure on the ground that the government defendant named in the proceeding—there, the Montana Department of Fish, Wildlife, and Parks—could adequately defend the measure. Although in that instance there was little reason to suspect that the named government defendant would not vigorously defend the initiative measure and the resulting legislation the initiative had engendered, the Montana Supreme Court nonetheless observed that the initiative proponents “who actively drafted and supported 1-143 may be in the best position to defend their interpretation of the resulting legislation” (40 P.3d at p. 403) and held that, as a general matter, initiative *1165 proponents “are entitled to intervene as a matter of right’’ in an action challenging the validity of the measure they have sponsored (ibid., italics added).[27]
IV. Conclusion
In response to the question submitted by the Ninth Circuit, we conclude, for the reasons discussed above, that when the public officials who ordinarily defend a challenged state law or appeal a judgment invalidating the law decline to do so, under article II, section 8 of the California Constitution and the relevant provisions of the Elections Code, the official proponents of a voter-approved initiative measure are authorized to assert the state’s interest in the initiative’s validity, enabling the proponents to defend the constitutionality of the initiative and to appeal a judgment invalidating the initiative.
Kennard, J., Baxter, I., Werdegar, I., Chin, J., Corrigan, I., and Liu, J., concurred.

 The order in Strauss, supra, 46 Cal.4th 364, while granting the motion to intervene filed by the official proponents of Proposition 8, simultaneously denied a motion to intervene that had been filed by a separate pro-Proposition 8 advocacy organization, Campaign for California Families, that was not an official proponent of the challenged initiative measure.

 The decision rendered by the federal district court after trial was published as Perry v. Schwarzenegger (N.D.Cal. 2010) 704 F.Supp.2d 921 and, for convenience, will hereafter be referred to in this opinion as Perry I. The Ninth Circuit order submitting the question of standing to this court was published as Perry v. Schwarzenegger (9th Cir. 2011) 628 F.3d 1191, and will hereafter be referred to in this opinion as Perry II. After the Ninth Circuit filed its order, a new Governor of California took office and the matter was subsequently retitled Perry v. Brown, the current title of the proceeding in this court.
Hereafter, except when specifically referring to either the district court’s decision or the Ninth Circuit’s order, this opinion will refer to the federal lawsuit simply as the Perry action.

 In the Strauss litigation filed in this court, the petitioners challenged the validity of Proposition 8 only on state constitutional grounds, and did not raise the question of the constitutional validity of the measure under the federal Constitution. (See Strauss, supra, 46 Cal.4th at p. 412, fn. 11.) Our opinion in Strauss did not address the federal constitutional issue.

 The relevant portion of the transcript of the July 2, 2009 hearing reads: “[W]ith respect to the motion to intervene, that basically is unopposed and, it does seem to me, substantially justified in this case, particularly where the authorities, the defendants who ordinarily would defend the proposition or the enactment that is being challenged here, are taking the position that, in fact, it is constitutionally infirm]]. And so, it seems to me, both for practical reasons and reasons of proceeding in this case in an orderly and judicial fashion that intervention is appropriate. [][] Certainly, under California law, as I understand it, proponents of initiative measures have the standing to represent proponents and to defend an enactment that is brought into law by the initiative process. [][].. . [A]re there any objections to granting the motion to intervene? [][] (No response.) [f] . . . Hearing none, that motion will be granted.”

 The district court in Perry also granted a motion filed by the City and County of San Francisco (San Francisco) to intervene in the action on behalf of plaintiffs. As an intervener, San Francisco has participated as a party in these proceedings in the district court, in the Ninth Circuit, and in this court. Although plaintiffs and San Francisco have filed separate briefs in this court, the legal arguments raised by these parties largely overlap and for convenience we shall refer to the arguments presented by any of these parties as plaintiffs’ arguments.
At a later stage of the district court proceedings, the County of Imperial, the Imperial County Board of Supervisors, and the Imperial County Deputy County Clerk/Recorder moved to intervene in the action to defend the validity of Proposition 8. The district court did not rule on the Imperial County motion to intervene until after the trial was completed and the court had handed down its ruling on the merits. At that point, the district court denied the intervention motion. Thereafter, Imperial County, its board of supervisors and its deputy county clerk/recorder appealed the denial of their motion to intervene to the Ninth Circuit. On the same day the Ninth Circuit filed its order submitting the question of Proponents’ standing to this court, the Ninth Circuit issued an opinion affirming the district court’s denial of intervention by Imperial County, its board of supervisors and its deputy county clerk/recorder. In affirming the denial of intervention, the Ninth Circuit opinion relied in part on the fact that intervention had been sought by the deputy county clerk/recorder rather than the county clerk/recorder herself; the opinion left open the question whether a county clerk/recorder would have standing to intervene. On February 25, 2011, the newly elected County Clerk/ Recorder of Imperial County filed a motion in the Ninth Circuit seeking to intervene in the action. That motion is currently pending in the Ninth Circuit.

 Initially, all five of the individual proponents of Proposition 8 moved to intervene in the Perry litigation. In the course of the district court litigation, one of the individual proponents— Hak-shing William Tam (Tam)—moved to withdraw as a defendant intervener. The district court did not rule on Tam’s motion to withdraw until after it issued its decision on the merits, and at that point the district court denied the motion to withdraw as moot.
Tam did not join in the appeal from the district court judgment that was filed in the Ninth Circuit by the other four individual proponents and ProtectMarriage.com. For convenience, *1131 further references to “Proponents" refer collectively to the four individual proponents and ProtectMarriage.com who filed the appeal in the Ninth Circuit and have participated in the present proceeding in this court.

 Under federal law, a party who has been permitted to intervene in a lower court proceeding is entitled to appeal a judgment in the absence of the party on whose side intervention was permitted only upon a showing that the intervener independently fulfills the case or controversy requirements of article DI of the federal Constitution. (See, e.g., Diamond v. Charles (1986) 476 U.S. 54, 68 [90 L.Ed.2d 48, 106 S.Ct. 1697].) Under California law, by contrast, a party who has been permitted to intervene in a lower court proceeding to defend an action may appeal from an adverse judgment despite the failure of the original defendant to file an appeal. (See, e.g., People v. Perris Irrigation District (1901) 132 Cal. 289, 290-291 [64 P. 399].)

 In addition to disagreeing as to whether Proponents have standing to appeal, in their briefs and oral argument before the Ninth Circuit plaintiffs and Proponents disagreed on the consequences that would flow from a determination by the Ninth Circuit that Proponents lack standing to appeal and the dismissal of their appeal. Plaintiffs contended that a dismissal of the appeal would leave the district court judgment in effect and that the district court ruling would be binding on the named state officers and on the two named county clerks. Proponents contended, by contrast, that if the Ninth Circuit determines they lack standing to appeal, that court would be required not only to dismiss the appeal but also to vacate the district court judgment. (See Perry II, supra, 628 F.3d at p. 1195 & fn. 2.) Because it submitted the question of Proponents’ standing under state law to this court, the Ninth Circuit did not indicate its view as to the effect on the district court judgment of a determination that Proponents lack standing to appeal.

 Decisions of the United States Supreme Court clearly establish that “a State has standing to defend the constitutionality of its statute.” (Diamond v. Charles, supra, 476 U.S. 54, 62; see also Maine v. Taylor (1986) 477 U.S. 131, 137 [91 L.Ed.2d 110, 106 S.Ct. 2440] [“a State clearly has a legitimate interest in the continued enforceability of its own statutes . . .”].)

 In In re Forsythe, supra, 450 A.2d 499—the decision of the New Jersey Supreme Court that was cited and relied upon in Karcher for the proposition that under New Jersey law the legislature, through the Speaker of the General Assembly and the President of the Senate, had authority to represent the state’s interests in defending a challenged state law—the New Jersey Supreme Court very briefly explained the participation of the Speaker of the General Assembly and the President of the Senate in that litigation, stating: “The initial adversary parties in the case were the petitioners and the Attorney General. In addition, the Court granted the applications of the Speaker of the General Assembly and the General Assembly, and the President of the Senate and the Senate to intervene as parties-respondent, all of whom, with the Attorney General, defend the validity of the enactment.” (450 A.2d at p. 500.)
Thus, in Forsythe, the parties who the United States Supreme Court in Karcher subsequently concluded had authority under state law to represent the state’s interest in defending a challenged statute were permitted to intervene in a New Jersey Supreme Court case to defend the validity of a challenged statute alongside the New Jersey Attorney General who was also defending the statute.

 We note that unlike in Karcher, supra, 484 U.S. 72, in Arizonans for Official English the government officials named as defendants in the federal lawsuit did defend the constitutional validity of the challenged state provision in the district court proceedings. (Arizonans for Official English, supra, 520 U.S. at pp. 51-53.) And, again unlike in Karcher, in Arizonans for Official English the official initiative proponents did not seek to intervene in the litigation until after the district court already had issued its judgment striking down the initiative measure on constitutional grounds. (520 U.S. at p. 56.)
As the passage from Arizonans for Official English quoted above (ante, at p. 1136) indicates, the high court in that case also cited The Don’t Bankrupt Washington Committee v. Continental Illinois National Bank & Trust Company of Chicago, supra, 460 U.S. 1077, a summary order that dismissed an appeal from a Ninth Circuit decision for lack of standing. As in Arizonans for Official English, in Don’t Bankrupt Washington Committee the named government defendants defended the challenged initiative on behalf of the state in the lower courts (see Continental Illinois National Bank, etc. v. State of Washington (9th Cir. 1983) 696 F.2d 692, 697-702), and there is no indication that the official initiative proponents in that matter established that, under the applicable state law (there, the law of the State of Washington), an initiative measure’s official proponents have standing to defend the measure when the named state defendants in the litigation have undertaken such a defense.

 The constitutional provisions relating to the initiative power are currently set forth in article II, sections 8 and 10, article IV, section 1, and article XVIH, sections 3 and 4 of the California Constitution.
Article n, section 8, provides in relevant part: “(a) The initiative is the power of the electors to propose statutes and amendments to the Constitution and to adopt or reject them.
“(b) An initiative measure may be proposed by presenting to the Secretary of State a petition that sets forth the text of the proposed statute or amendment to the Constitution and is certified to have been signed by electors equal in number to 5 percent in the case of a statute, and 8 percent in the case of an amendment to the Constitution, of the votes for all candidates for Governor at the last gubernatorial election.
“(c) The Secretary of State shall then submit the measure at the next general election held at least 131 days after it qualifies or at any special statewide election held prior to that general election. The Governor may call a special statewide election for the measure.”
Article II, section 10 provides in relevant part: “(a) An initiative statute . . . approved by a majority of votes thereon takes effect the day after the election unless the measure provides otherwise. Q] . . . [j[|
“(c) The Legislature . . . may amend or repeal an initiative statute by another statute that become effective only when approved by the electors unless the initiative statute permits amendment or repeal without their approval.
“(d) Prior to circulation of an initiative ... petition for signatures, a copy shall be submitted to the Attorney General who shall prepare a title and summary of the measure as provided by law.
“(e) The Legislature shall provide the manner in which petitions shall be circulated, presented, and certified, and measures submitted to the electors.”
Article IV, section 1 provides in full: “The legislative power of this State is vested in the California Legislature which consists of the Senate and Assembly, but the people reserve to themselves the powers of initiative and referendum.”
Article XVIII, section 3 provides in full: “The electors may amend the Constitution by initiative.”
Article XVIII, section 4 provides in relevant part: “A proposed amendment . . . shall be submitted to the electors and if approved by a majority of votes thereon takes effect the day after the election unless the measure provides otherwise.”

 Elections Code section 9001 also requires the proponents of an initiative measure, in submitting their request for a title and summary, to pay a fee which is to be refunded to the proponents if the measure qualifies for the ballot within two years from the date the summary is furnished to the proponents.

 Past decisions have frequently drawn a distinction, for purposes of intervention, between, on the one hand, the official proponents of an initiative measure or organizations that were directly involved in drafting and sponsoring the measure, and, on the other hand, other advocacy groups that ideologically support the measure.
As noted above (fh. 1, ante, at p. 1128), in the Strauss litigation our court granted the motion filed by the official proponents of Proposition 8 to intervene as formal parties in defending the initiative measure, but at the same time denied a motion to intervene that had been filed by another pro-Proposition 8 advocacy group. (See also Connerly v. State Personnel Bd. (2006) 37 Cal.4th 1169, 1178-1179 [39 Cal.Rptr.3d 788, 129 P.3d 1] [contrasting the status of an amicus curiae advocacy group with that of official proponents of a ballot measure in concluding that the amicus curiae could not properly be held liable for attorney fees awarded under Code Civ. Proc., § 1021.5].)
In light of this distinction, plaintiffs’ reliance upon the Court of Appeal decision in City and County of San Francisco v. State of California (2005) 128 Cal.App.4th 1030 [27 Cal.Rptr.3d 722] lacks merit. In that case, the Court of Appeal affirmed a trial court order denying a motion filed by an advocacy organization—the Proposition 22 Legal Defense and Education Fund— seeking to intervene in an action challenging the validity of Proposition 22. In upholding the trial court order denying intervention, however, the Court of Appeal explicitly stated that “the Fund itself played no role in sponsoring Proposition 22 because the organization was not even created until one year after voters passed the initiative” (128 Cal.App.4th at p. 1038), and explained that “this case does not present the question of whether an official proponent of an initiative (Elec. Code, § 342) has a sufficiently direct and immediate interest to permit intervention in litigation challenging the validity of the law enacted” (128 Cal.App.4th at p. 1038). Thus, contrary to plaintiffs’ contention, that decision is not inconsistent with the numerous decisions both of this court and the Courts of Appeal that have permitted the official proponents of an initiative measure to intervene in actions challenging the validity of the initiative measure. For the same reason, this court’s subsequent determination in In re Marriage Cases, supra, 43 Cal.4th 757, 789-791, that the same advocacy group—the Proposition 22 Legal Defense and Education Fund—lacked standing to maintain a lawsuit to obtain a declaratory judgment upholding the validity of Proposition 22 does not support plaintiffs’ claims regarding the nature and scope of the authority possessed by the official proponents of an initiative measure.

 Neither the statutory provision relating to intervention nor the provision pertaining to the status of a real party in interest addresses the question whether a would-be party’s proposed participation is to assert its own interest or to assert the state’s interest.
Code of Civil Procedure section 387—the intervention statute—provides in relevant part: “(a) Upon timely application, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding. . . . Q] (b) If any provision of law confers an unconditional right to intervene or if the person seeking intervention claims an interest relating to the property or transaction which is the subject of the action and that person is so situated that the disposition of the action may as a practical matter impair or impede that person’s ability to protect that interest, unless that person’s interest is adequately represented by existing parties, the court shall, upon timely application, permit that person to intervene.”
Code of Civil Procedure section 367—the real party in interest statute—provides simply: “Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute.”

 Although past California decisions have generally not had occasion to explicitly address the rationale or basis underlying the authority of official initiative proponents to participate as interveners or real parties in interest, the Ninth Circuit’s question to this court demonstrates that the underlying basis for proponents’ participation under California law is potentially *1146 determinative of the question whether the proponents have standing under federal law to appeal a lower federal court judgment invalidating a California voter-approved initiative when the public officials who ordinarily would pursue such an appeal have declined to do so. Because, as we have seen, it is well established that California courts have an obligation to liberally construe the provisions of the California Constitution relating to the initiative power to assure that the initiative process is not directly or indirectly annulled (see Associated Home Builders, supra, 18 Cal.3d at p. 591), and because the California initiative process may be undermined if a California initiative goes undefended in a federal proceeding because federal courts lack a proper understanding of the basis of the authority possessed by an initiative measure’s official proponents under California law, it is entirely appropriate that we resolve the issue posed by the Ninth Circuit.

 This does not mean that state officials cannot participate in such litigation and take a position on whether the preelection challenge has merit. (See, e.g., Schmitz v. Younger (1978) 21 Cal.3d 90, 93 [145 Cal.Rptr. 517, 577 P.2d 652].) Because the measure has not yet been adopted, however, public officials would not be representing the state’s interest in defending a duly enacted law.

 Plaintiffs point out that the invalidation of Proposition 8 in the underlying federal litigation did not result from any action or inaction by the Governor or Attorney General but from a decision by the federal district court after a contested trial. Ordinarily, however, public officials who are defending a state law against a constitutional challenge can be expected to appeal an adverse trial court judgment to an appellate court. Indeed, from the outset of the federal district court proceedings in the underlying case, the district court itself emphasized its expectation that its decision would constitute only the first stage of proceedings that would lead to an appellate court determination of the significant constitutional question at issue in the proceeding. The inability of the official proponents of an initiative measure to appeal a trial court judgment invalidating the measure, when the public officials who ordinarily would file such an appeal decline to do so, would significantly undermine the initiative power.

 Because the Ninth Circuit has asked us to determine only whether the official proponents of an initiative measure have authority under California law to assert the state’s interest in the validity of an initiative when the public officials who ordinarily defend the measure decline to do so, we have no occasion to address the hypothetical question whether in a case in which public officials have declined to defend the measure and the official initiative proponents are not available or do not seek to assert the state’s interest in the validity of the measure, other individuals or entities would be entitled to intervene in the proceeding to assert the state’s interest in the validity of the initiative. We express no opinion on that question.

 Article V, section 1 of the California Constitution provides in full: “The supreme executive power of this State is vested in the Governor. The Governor shall see that the law is faithfully executed.”
Article V, section 13 of the California Constitution provides in relevant part: “Subject to the powers and duties of the Governor, the Attorney General shall be the chief law officer of the State. It shall be the duty of the Attorney General to see that the laws of the State are uniformly and adequately enforced.”

 Government Code section 12511 provides in relevant part: “The Attorney General has charge, as attorney, of all legal matters in which the State is interested . . . .”
Government Code section 12512 provides: “The Attorney General shall attend the Supreme Court and prosecute or defend all causes to which the State, or any State officer is a party in his or her official capacity.”
Code of Civil Procedure section 902.1 authorizes the Attorney General to intervene and participate in any appeal in any proceeding in which a state statute or regulation has been declared unconstitutional by a court.

 Plaintiffs’ reliance on the Court of Appeal’s ruling in Beckley v. Schwarzenegger (Sept. 1, 2010, C065920), summarily denying a petition for writ of mandate that sought to compel the Governor and the Attorney General to file notices of appeal from the federal district court’s decision in Perry, is misplaced. The question whether the Governor or the Attorney General has discretion to decline to defend a challenged law or to appeal a lower court ruling invalidating the law is totally distinct from the issue whether some other official or individual has standing to do so, and thus the order in Beckley has no bearing on the determination whether the official proponents of an initiative have standing to file such an appeal.

 In Chadha, a federal statutory provision that authorized either house of Congress, by resolution of that house alone, to invalidate a decision by the Immigration and Naturalization Service (INS) to allow a particular deportable alien to remain in the United States was challenged as a violation of the separation of powers doctrine. In that proceeding, the INS—represented by the United States Attorney General—agreed with the petitioner alien’s claim that the one-house veto provision was unconstitutional, and Congress was permitted to intervene in the court of appeals to defend the challenged statute. When the case reached the Supreme Court, the high court explicitly held that “Congress is both a proper party to defend *1157 the constitutionality of [the challenged statute] and a proper petitioner under 28 U. S. C. § 1254(1).” (Chadha, supra, 462 U.S. at p. 939.)

 The propriety of congressional or legislative participation in court proceedings in defense of a challenged statute is also illustrated by the circumstances surrounding the United States Attorney General’s recent decision to cease defending the validity of a provision of the federal Defense of Marriage Act (1 U.S.C. § 7) in court actions challenging that statute. At the same time the Attorney General announced that he would no longer defend the statute in question because he and the President of the United States had concluded that the measure was unconstitutional, the Attorney General stated: “I have informed Members of Congress of this decision, so Members who wish to defend the statute may pursue that option. The Department will also work closely with the courts to ensure that Congress has a full and fair opportunity to participate in pending litigation.” (Statement of the Atty. Gen. on Litigation Involving the Defense of Marriage Act (Feb. 23, 2011) <http://www.justice.gov/opa/pr/2011/February/ll-ag222.html> [as of Nov. 17, 2011].)

 We note that in both the public interest and private attorney general contexts, the authority of private individuals to act on behalf of the public interest under California law was initially recognized by judicial decision notwithstanding the absence of any specific constitutional or statutory provision expressly granting such authority. (See, e.g., Green v. Obledo, supra, 29 Cal.3d at pp. 144-145, and cases cited; Serrano v. Priest, supra, 20 Cal.3d at pp. 45-47.)

 The court added a narrow qualification to its broad holding that initiative proponents are entitled to intervene in such litigation as a matter of right, explaining that “Alaska courts should retain discretion to deny intervention in exceptional cases, because [the relevant Alaska statute relating to initiative sponsors] places no limit on the number of initiative sponsors and therefore potentially opens the door to an unlimited number of motions for intervention. As an alternative to limiting intervention in those cases, courts may instead choose to reduce duplication by requiring those sponsors with substantially similar interests to consolidate then-briefing and to participate through lead counsel.” (Alaskans for a Common Language, supra, 3 P.3d at p. 914.)

 We note that both Alaskans for a Common Language, supra, 3 P.3d 906, and Sportsmen for 1-143, supra, 40 P.3d 400, were decided after the United States Supreme Court’s decision in Arizonans for Official English, supra, 520 U.S. 43. Those decisions confirm that the federal high court’s decision in Arizonans for Official English imposes no impediment to a state court’s determination that, under state law, an initiative proponent has the authority to intervene as of right in an action in state court challenging the validity of an initiative measure.